UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADEKUSIBE MARK ONIBOKUN | Case No. 1:21-cv-00497-DCN |
| Petitioner, | 1:19-cr-00228-DCN |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

# I. INTRODUCTION

Pending before the Court in the above-entitled matter is Petitioner Adekusibe Mark Onibokun's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Dkt. 1; CR–228, Dkt. 87.[1] The Government filed a Reply to Onibokun's Motion on April 1, 2022. Dkt. 5. Onibokun filed his Response on April 28, 2022. Dkt. 6. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES the Motion.

---

[1] In this Order, "CR–228" is used when citing to Onibokun's criminal case record in 1:19-cr-00228-DCN. All other docket citations are to the record in the instant civil case. Onibokun filed his original Motion to Vacate in his criminal case. CR–228, Dkt. 87.

## II. BACKGROUND

Onibokun was found in possession of a Glock pistol on June 4, 2019. CR–228, Dkt. 1. Given his criminal record, Onibokun was prohibited from possessing a firearm. *Id.* On July 10, 2019, a grand jury indicted Onibokun for unlawful possession of a firearm. *Id.*; *See* 18 U.S.C. § 922(g)(1). Onibokun pled not guilty and the case proceeded to trial. Between his arraignment on January 29, 2020, and his parole date of September 14, 2020, Onbokun served his revoked state sentence in state prison.[2] CR–228, Dkt. 12. On January 29, 2020, Onibokun waived his right to be transferred to federal custody and instead opted to remain in state custody. *Id.*

In his Motion, Onibokun suggests it was his understanding that he would receive credit for the time he served in state custody between arraignment and his supervised release date—a period of just over eight months. Dkt. 1, at 3. Onibokun states that when his attorney, Thad Blank, presented him with the Federal Custody Waiver form ("Waiver"), he was never informed that he would not receive federal credit for time served if he chose to stay in state custody. *Id.* at 2.[3] Onibokun claims that if Blank had informed him that he would not receive credit for time served, he would not have signed the Waiver. Dkt. 1, at

---

[2] In 2005, Onibokun was given a 15-year suspended prison sentence for a state crime. CR-228, Dkt. 72, at 7. His state probation was revoked on a number of occasions, including on June 4, 2019, when he was arrested for the instant federal crime. *Id.* at 8. Onibokun was paroled from his state sentence to a federal detainer for the instant crime on September 14, 2020. *Id.*

[3] In fact, neither the Federal Custody Waiver, nor the site of pretrial detention, have any role in a person's right to credit for time in pretrial custody under federal law. Dkt. 5-1, ¶ 8. Regardless of whether a defendant chooses to sign a Federal Custody Waiver, they will not receive credit for their time in pretrial detention where, as here, the defendant is in primary state custody due to a parole revocation. *Id.*, ¶ 9; 18 U.S.C. § 3585; *see also Raines v. United States Parole Comm'n*, 829 F.2d 840, 843 (9th Cir. 1987) ("[T]here is no statutory provision that accords a prisoner credit against a federal sentence for time served in state prison on a state charge.").

3. In his affidavit. Blank states he does not specifically recall discussing the impact of the Waiver on Onibokun's right to receive credit for time served. Dkt. 5–1, at ¶ 7. However, Blank attests he routinely informs his clients that whether or not they choose to sign the Waiver "has no role in a person's right to credit for time in pretrial custody under federal law." *Id.*, ¶ 8.

In his Reply, Onibokun changes course and argues Blank was ineffective for failing to explain that he would not receive credit for time served. Dkt. 6, at 2. Had Blank informed him of this, Onibokun claims he may not have taken his case to trial. *Id.* This claim is a marked shift from Onibokun's argument in his initial Motion. Originally, Onibokun argued he would not have signed the Waiver if Blank had informed him that he would not receive credit for time served in state custody. In his Reply, Onibokun instead contends that Blank's failure to inform him that he would not receive credit for time served—regardless of what institution he was housed in—put him in a disadvantaged position when deciding to proceed. Had he known, he claims he may have decided to accept a purported plea deal of a one year and one day prison sentence. *Id.*

Still, trial commenced on November 2, 2020. CR–228, Dkt. 53. It lasted one day but resulted in a mistrial.[4] *Id.* The Government later discovered that Onibokun had lied on the witness stand during trial. CR–228, Dkt. 69, at 3, 5–6. Onibokun thereafter pled guilty on December 12, 2020, without the benefit of a plea agreement. CR–228, Dkt. 59, 68, 76,

---

[4] The Court received a note from the jury advising they were deadlocked. After consulting with the attorneys, the Court gave the jury the *Allen* instruction and advised them to continue deliberating. After further deliberations, the jury said they were still deadlocked, and the Court declared a mistrial.

at 2. Sentencing was held on April 7, 2021. CR–228, Dkt. 80. Judgment was entered on April 9, 2021, and Onibokun was sentenced to 40 months. CR–228, Dkt. 81. The Court recommended to the Bureau of Prisons ("BOP") that Onibokun receive credit for time served. *Id.* at 2.[5]

Onibokun's current release date from federal prison is set for July 18, 2023. On December 16, 2021 Onibokun timely filed a 28 U.S.C. § 2255 Motion alleging ineffective assistance of counsel.

### III. LEGAL STANDARD

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled

---

[5] It should be noted that a recommendation is just that—a recommendation. *See United States v. Ceballos*, 671 F.3d 852, 855–56 (9th Cir. 2011). The recommendation is not binding on the Bureau of Prisons. *Id* (citing *United States v. Yousef,* 327 F.3d 56, 165 (2d Cir.2003)).

to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

Onibokun claims ineffective assistance of counsel via § 2255. The United States Supreme Court has noted that "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[6] Therefore, a petitioner must

---

[6] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and must instead "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

satisfy both prongs of "the two-part *Strickland v. Washington* test." *Hill v. Lockhart*, 474

U.S. 52, 56–58 (1985) (citing *Strickland*, 466 U.S. at 687–90); *see also Lee v. United*

*States*, 137 S. Ct. 1958, 1964–67 (2017). A petitioner must prove both that: (1) counsel's

performance was deficient; and (2) there is a reasonable probability that, but for the

deficient performance, the result of the proceeding would have been different. *Strickland*,

466 U.S. at 688.

    Given the arguments in his § 2255 Motion, to establish Blank's assistance was

ineffective under *Strickland*, Onibokun must show both that (1) Blank's failure to inform

him that he was not eligible for credit for time served was not "'within the range of

competence demanded of attorneys in criminal cases,'" *Hill*, 474 U.S. at 56–59 (cleaned

up); and (2) that he "would have accepted the earlier plea offer had [he] been afforded

effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).[7]

    Onibokun's main contention is that Blank failed to inform him that he would not

receive credit for time spent in state prison. He argues that this omission "played a key role

in [his] decision to take this case to trial." Dkt. 6, at 2.[8] He notes that if he knew he was not

---

[7] The Supreme Court has also noted that to establish prejudice when a plea offer has been rejected, a "defendant must show reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed.'" *Ortiz v. Sec'y*, 2021 WL 3079686, at *4 (M.D. Fla. July 21, 2021) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). Onibokun has not addressed, or therefore satisfied, any of these requirements.

[8] As previously noted, this argument was raised in Onibokun's Reply and differs from the argument he raised in his initial Motion. The Court traditionally will not address arguments raised for the first time in a reply brief. However, given that Onibokun is *pro se*, the Court will address the argument as if it was raised in his original § 2255 Motion.

MEMORANDUM DECISION AND ORDER-6

receiving such credit, he would have had a better perspective on the Government's plea offer. *Id*.[9] Even if this allegation is true,[10] the Court struggles to find any prejudice. Onibokun merely states that "knowing the specifics regarding credit for time served would've allowed me to perceive the prosecution's offer from a much accurate perspective." *Id*. There is no indication that Onibokun would have actually taken the plea deal had he known he was not receiving credit for time served. *See Ortiz*, 2021 WL 3079686, at *3 (finding "Defendant's testimony that he would 'possibly' have taken the plea deal showed that Defendant did not unequivocally intend to take a plea deal"). Onibokun does not establish there was a "reasonable probability" he would have accepted the plea. Certainly, there is no indication that he *unequivocally* intended to take the plea.

Moreover, the Court is doubtful that knowing about credit for time served would have altered Onibokun's decision to reject the plea deal. Typically, defendants choose to take their case to trial when they find out they are *not* eligible for credit. *Compare, e.g.*, *Jenkins v. Sec'y, Dep't of Corr.*, 2017 WL 5989442, at *6 (M.D. Fla. Jan. 19, 2017) ("Petitioner maintains that had he known he would not get credit for time served, he would have gone to trial"); *Mitchell v. Huss*, 2021 WL 9056393, at *6 (W.D. Mich. Aug. 25, 2021) ("Petitioner insists he would have never entered his plea if he had known

---

[9] According to Onibokun, the Government offered Onibokun twelve months and one day in exchange for a guilty plea.

[10] Onibokun's attorney, Mr. Blank, cannot remember whether he discussed credit for time served with Onibokun. It's likely he did given that he routinely informs his clients that they "will not receive credit for their time in pretrial detention." Dkt. 5–1, at ¶ 8.

the true state of affairs regarding credit for time served."), *with Ortiz*, WL 3079686, at *4 (Petitioner possibly "would have taken the plea deal if he would have known that credit for time served would have applied."). Here, however, Onibokun claims he may have chosen the opposite—that is to plead guilty despite not receiving credit for time served. The Court is leery that this would have occurred.

Finally, it is notable that the decision with respect to whether credit for time served will be granted is not up to an attorney or even the court. That decision is ultimately left to the Attorney General through the Bureau of Prisons . 18 U.S.C. § 3585; *United States v. Wilson*, 503 U.S. 329, 334–35 (1992). The only potential prejudice Onibokun can show then is that Blank's purported failure to inform him that he would not receive credit for time served led him to proceed to trial, and to eventually receive a 40-month sentence— much longer than the 12-month plea offer.

There are several problems with this theory. First, Onibokun received a lengthy prison sentence not because of anything Blank did or did not do, but because he perjured himself on the witness stand. Even if Onibokun had proceeded to trial and been found guilty of unlawful possession of a firearm, his guidelines range would have been 18-24 months, from which the Court may have varied below depending on various 18 U.S.C. § 3553 factors. Instead, Onibokun went to trial, perjured himself on the stand, and, as a result, received a 2-level upward adjustment for obstruction of justice, and a variance above the guidelines range for perjury. CR—228, Dkt. 82, at 2, 3. The disparity between Onibokun's plea offer and sentence is a result of his own conduct, and not of anything Blank said or failed to say.

MEMORANDUM DECISION AND ORDER-8

Second, even if Blank failed to inform Onibokun that he would not receive credit for time served, there is a question of whether this conduct falls "'within the range of competence demanded of attorneys in criminal cases,'" or not. *Hill*, 474 U.S. at 56–59 (cleaned up). Onibokun has not provided, nor could the Court find, any authority to suggest that failing to advise a client that they will not receive credit for time served constitutes incompetence. In fact, based upon the Courts own research, a failure to inform a client on the topic of credit for time served is "well within the range of reasonable professional assistance." *Ortiz*, WL 3079686, at *4. Finally, as noted above, even if Blank had informed Onibokun that he would not receive credit for time served, Onibokun is unable to show that that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For these reasons, the Court DENIES Onibokun's ineffective assistance of counsel claim.

## V. CERTIFICATE OF APPEALABILITY

When a district court enters a final order denying a petition under § 2255*, it must either issue or deny a certificate of appealability ("COA"). By statute, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)*. When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set forth above, the Court concludes that Onibokun has failed to make any showing—let alone a substantial showing—that he was denied a constitutional

right. Accordingly, the Court will not issue a COA.

If Onibokun wishes to proceed to the United States Court of Appeals for the Ninth Circuit, he must file a notice of appeal in this Court within thirty days after the entry of this Order, and he must seek a COA from the Ninth Circuit in accordance with Federal Rule of Appellate Procedure 22(b)(2). *Id*. ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c) . . . ").

## VI. CONCLUSION

For the reasons stated above, the Court finds no reason to set aside Onibokun's conviction or sentence. Onibokun failed to establish that his counsel was deficient or that he was prejudiced in any way as a result of his counsel's performance. Therefore, Onibokun's § 2255 Motion is DENIED.

## VII. ORDER

IT IS HEREBY ORDERED:

   a. Onibokun's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt.1); CR–228 (Dkt. 87) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

   b. The Court finds there is no need for an evidentiary hearing.

   c. No certificate of appealability shall issue. Onibokun is advised that he may still request a certificate of appealability from the Ninth Circuit, pursuant to

MEMORANDUM DECISION AND ORDER-10

Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

d.  If Onibokun files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit.

DATED: December 1, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER-11